IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARRY LYNN RAMIREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-655-AMG |
| ) | |
| LELAND DUDEK, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Carry Lynn Ramirez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. (Doc. 1). The Commissioner has filed the Administrative Record ("AR") (Doc. 5), and the parties have fully briefed the issues (Docs. 7, 14, 15).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 12, 13). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

1

**I.     Procedural History**

Plaintiff filed her application for SSI on April 11, 2022, alleging a disability onset date of September 30, 2020. (AR, at 174-82). The SSA denied the application initially and on reconsideration. (*Id.* at 71, 72-80, 81, 82-90). An administrative hearing was held on August 17, 2023. (*Id.* at 42-70). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id.* at 14-37). The Appeals Council subsequently denied Plaintiff's request for review. (*Id.* at 1-3). Thus, the ALJ's decision became the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**II.    The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence from an acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 416.921; *see id.* §§ 416.902(a), 416.913(a). A plaintiff is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC")$^2$, whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of her age, education, and work experience." *Id.* "The claimant is entitled

---

$^2$ RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a).

to disability benefits only if he is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "[a]n agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

### III. Administrative Decision

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 11, 2022, the application date. (AR, at 19). At Step Two, the ALJ found Plaintiff had the following severe impairments: epilepsy, obesity, migraines, degenerative disc disease, hypertension, generalized anxiety disorder, dysthymia, mild cognitive impairment, and major depressive disorder. (*Id.*) At Step Three, the ALJ found Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 20). The ALJ then determined Plaintiff had the RFC

> to perform light work as defined in 20 CFR [§] 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolds. The claimant is to avoid all exposure to hazards, such as unprotected heights and heavy machinery. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can interact appropriately with supervisors and coworkers. The claimant can have occasional contact with the general public. The claimant can adapt to a work setting.

(*Id.* at 28). At Step Four, the ALJ concluded Plaintiff did not have any past relevant work. (*Id*. at 36). Then, at Step Five, the ALJ determined that when considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as housekeeping cleaner, merchandise marker, and inspector/packer. (*Id*. at 36-37). Thus, the ALJ found Plaintiff had not been under a disability since April 11, 2022, the date she filed her application. (*Id.* at 37).

## IV. Issues Presented for Judicial Review

Plaintiff raises two issues on appeal. First, Plaintiff contends the ALJ's RFC failed to adequately account for her mental functioning limitations. (Doc. 7, at 12-18; Doc. 15 at 2-4). Second, Plaintiff argues the ALJ erred in his evaluation of Dr. Theresa Horton's medical opinion. (Doc. 7, at 18-21; Doc. 15, at 4-9).

The Commissioner responds that the ALJ reasonably accounted for Plaintiff's mental limitations in the RFC. (Doc. 14, at 6-12). He also contends the ALJ applied the correct legal standards in evaluating Dr. Horton's opinion. (*Id.* at 12-15).

## V. The ALJ Properly Accounted for Plaintiff's Mental Limitations in the RFC.

At Step Two, the ALJ found that Plaintiff's severe impairments included generalized anxiety disorder, dysthymia, mild cognitive impairment, and major depressive disorder. (AR, at 19). When evaluating a claimant's mental impairments, the ALJ utilizes the psychiatric review technique ("PRT") that "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' criteria . . . of the adult mental disorders listings." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4; *see also Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013). These criteria consider whether a claimant can "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b). But "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment." SSR 96-8p, 1996 WL 374184, at *4. Rather, they "are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Id.*

Here, the ALJ found Plaintiff had moderate limitations in each of the "paragraph B" functional areas. (AR, at 25-27).

Plaintiff first asserts that for each of her mental function limitations, the ALJ must account for them in the RFC. (Doc. 7, at 14). The Tenth Circuit has explicitly rejected this argument, holding that an ALJ's finding of a moderate limitation in the mental function categories at step three "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil*, 805 F.3d at 1203; *see also Beasley*, 520 F. App'x at 754 n.3 (rejecting the plaintiff's argument that prior case law requires "an ALJ's RFC assessment to mirror his step three-findings" and noting SSR 96-8's caution to adjudicators that "the limitations identified in the paragraph B . . . criteria are not an RFC assessment . . . ." (internal quotation marks omitted)). Thus, rather than a bright line rule, courts consider on a case-by-case basis whether an ALJ adequately accounted for mental limitations identified at step three. *See Dolan v. Kijakazi*, 2023 WL 8185927, at *5 (D. Colo. Nov. 27, 2023) ("[A] case-by-case analysis is required to determine whether an RFC's limitations adequately account for all impairments found by the ALJ and supported by the record.") (internal quotation marks omitted).

Plaintiff next narrows her argument, asserting that the ALJ's RFC failed to adequately account for her moderate limitations in the ability to concentrate, persist, and maintain pace. (Doc. 7, at 14-16). Both parties agree that an ALJ may account for a plaintiff's limitations by limiting her to particular types of work activity. *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016); *see also Evans v. Colvin*, 640 F. App'x 731, 738 (10th Cir. 2016) (noting that a "restriction to unskilled work can account for a mental

7

impairment in an appropriate case, for example, when the relationship between skill level and mental capacity is obvious . . . or when an ALJ credits a medical-source opinion that a claimant's concentration deficit does not affect the ability to do unskilled work"). The Commissioner argues the ALJ accounted for these limitations by limiting Plaintiff to unskilled work involving simple, routine, and repetitive tasks. (Doc. 14, at 9-10). Plaintiff contends this reasoning is not apparent in the decision and is merely a post-hoc rationalization to support the RFC. (Doc. 15, at 3-4).

In his decision, the ALJ explained that Plaintiff was able to maintain conversational exchanges with mental health examiners and stay on task during evaluations, was alert and oriented, maintained appropriate eye contact, and exhibited logical, organized, and goal directed thought processes, and adequate concentration. (AR, at 26, 30, 31) (citing *id.* at 341-43, 349-52, 404, 435, 502, 512). He also noted Plaintiff's own reports that she was independent in all activities of daily living, including preparing her own meals, performing chores, reading, using social media, taking care of her pets, shopping, paying bills, counting change, handling a savings account, using a checkbook, and did not need reminders to go places. (*Id.* at 26, 29, 31) (citing *id.* at 206-14). She had a valid driver's license and was able to drive and go out alone. (*Id.* at 26, 29) (citing *id.* at 206-14, 349-52). Although Plaintiff testified during the administrative hearing that she had problems concentrating and completing projects, in her Function Report she denied having problems completing tasks, reporting that she could pay attention for as long as needed, finish what she starts, and follow written and verbal instructions. (*Id.* at 26, 29, 32) (citing *id.* at 56-57, 206-14).

8

Dr. Horton performed a consultative mental examination on Plaintiff on August 19, 2022. (*Id.* at 30, 349-52). During the examination, Plaintiff spelled 'world' forward and backward, was able to interpret proverbs, counted by 3s, though at a below average pace, and exhibited appropriate judgment and fair insight. (*Id.* at 26, 30) (citing *id.* at 351-52). Dr. Horton concluded that Plaintiff's concentration was adequate and she was "capable of understanding, remembering, and managing mostly simple and perhaps somewhat more complex instructions and tasks, as long as they are routine and/or repetitive; that it appears to take her longer to complete tasks than one would expect." (*Id.* at 30) (citing *id.* at 351-52).[3]

Additionally, at both the initial and reconsideration levels of consideration, the state agency psychologists conducted a consultative review of the record and indicated in the PRT form that Plaintiff had moderate limitations in the general category of concentrating, persisting, or maintaining pace. (*Id.* at 74, 84). The Mental Residual Functional Capacity form breaks down the PRT limitation categories into several subcategories under "sustained concentration and persistence limitations." (*Id.* at 78, 88). The only subcategory in this area in which the psychologists concluded Plaintiff had limitations was her ability to carry out detailed instructions, finding her "markedly limited." (*Id.*) In the remaining subcategories, they found Plaintiff was not significantly limited, including in her ability to maintain attention and concentration for extended periods. (*Id.*) They also

---

[3] In her second issue on appeal, Plaintiff challenges the ALJ's evaluation of Dr. Horton's opinion, arguing that the ALJ improperly discounted the same. (Doc. 7, at 18-21). However, the ALJ clearly found this portion of Dr. Horton's opinion persuasive, incorporating it into the RFC.

concluded that she could "understand, recall and perform simple repetitive tasks," and was "able to focus for two hour periods with routine breaks" and "pace and persist for an 8 hour work day and 40 hour work week despite psychological symptoms." (*Id.* at 78, 89). The ALJ found these portions of their opinions persuasive and Plaintiff did not challenge either their findings or the ALJ's assessment of the same.[4]

Plaintiff has not presented any evidence beyond her own speculation that a limitation to unskilled work involving simple, routine, and repetitive tasks is not sufficient to accommodate her moderate limitations in concentration and maintaining pace. In determining the RFC, the ALJ thoroughly examined the record, including three medical opinions finding Plaintiff's concentration-related limitations did not require a more restrictive RFC. *See, cf., Lager v. Comm'r, SSA*, 2023 WL 6307490, at *2 (10th Cir. Sept. 28, 2023) (finding the ALJ's RFC limiting the plaintiff to "simple work-related judgments and decisions" and "only short and simple instructions" accounted for moderate limitations in concentration, persistence, and pace). As the ALJ fulfilled his duty in rendering this decision, Plaintiff's claim of error is without merit.

---

[4] In his decision, the ALJ concluded their opinions were "somewhat persuasive." (AR, at 35). The only area in which the psychologists' opinions and the RFC may have differed is Plaintiff's ability to adapt. In the RFC, the ALJ found that Plaintiff can adapt to a work setting, while the psychologists' qualified this ability by finding that Plaintiff can adapt to "occasional changes in a work environment where the work demands are generally stable." (*Id.* at 28, 79, 89). Given the RFC's additional limitation to simple, routine, repetitive tasks, the difference between these opinions and the RFC is minimal.

## VI. The ALJ Properly Evaluated Dr. Horton's Opinion.

### A. Applicable Analysis

Under the applicable regulations, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] . . . including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Rather, the ALJ considers the persuasiveness of the opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." *Id.* § 416.920c(c). Supportability and consistency are the most important factors. *Id.* § 416.920c(a). "Supportability" examines how closely connected a medical opinion is to the medical source's objective medical evidence and supporting explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id.* § 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion to the other evidence: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 416.920c(c)(2).

The ALJ must articulate how persuasive he finds a medical opinion. *Id.* § 416.920c(b). In doing so, the ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.*

§ 416.920c(b)(2).[5]

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal citation omitted).

### B. The ALJ's Decision Adequately Illustrates His Reasoning in Discounting Dr. Horton's Medical Opinion.

Plaintiff argues that in finding Dr. Horton's opinion unpersuasive, the ALJ failed to identify the medical records and/or examination findings he concluded did not support and/or was inconsistent with her opinion. Following Dr. Horton's consultative examination, she concluded the following:

> [Plaintiff] appears capable of understanding, remembering and managing mostly simple and perhaps somewhat more complex instructions and tasks as long as they are routine and/or repetitive. It appears to take her longer to complete tasks than one would expect. She does not appear to adjust adequately socially/emotionally in many settings and particularly not in areas that are fast paced and/or densely populated. She has very limited employment history involving one job for 3 months doing light kitchen duty/dishwashing. It would likely be very difficult for [Plaintiff] to adapt into an occupational setting at this point in her life. She appears to benefit from support in the home now that her mother has moved in following the death of her husband, whom she had been with for 28 years. Prognosis is guarded.

---

[5] An ALJ must consider, but need not explicitly discuss, the remaining factors (relationship with the claimant, specialization, and other factors) unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record. 20 C.F.R. § 416.920c(b)(2), (3).

12

(AR, at 352). Upon considering her opinion, the ALJ stated that it was not consistent with the medical treatment record, Plaintiff's reported daily activities, the State agency physicians' opinion, or the observations of Nurse Katherine Moore, and that Dr. Horton's own objective examination findings did not support it. (*Id.* at 35). Based on this, he concluded that Plaintiff had fewer limitations than Dr. Horton assessed and therefore, found her opinion unpersuasive. (*Id.*)

Similar to the state agency psychologists, Dr. Horton's opinion only differed from the RFC regarding Plaintiff's ability to adapt to a work setting. Although Dr. Horton concluded that it would be very difficult for Plaintiff to adapt to a work setting at this point in her life, the ALJ found that she could do so. (*Id.* at 28, 352). Plaintiff complains the ALJ did not discuss his basis for this conclusion, and specifically the factors he is required to consider under 20 C.F.R. § 404.1520c. The Court disagrees.

In initially finding Plaintiff had moderate limitations in adapting or managing oneself, the ALJ discussed the record in detail. He initially explained that, in addition to those factors discussed above related to Plaintiff's concentration limitations, the record shows she tolerates and manages difficult situations well, is aware of normal hazards and taking appropriate measures, can make plans independently of others, and set realistic goals. (AR, at 27). Also, contrary to Plaintiff's assertion, the ALJ discussed Plaintiff's visits with Nurse Moore, including her notations that Plaintiff was independent in all activities of daily living, and presented as cooperative with completely intelligible speech and normal thought processes. (*Id.* at 27, 30) (citing *id.* at 341-46). Further, the ALJ discussed Plaintiff's own reports that she goes out alone, spends time with others, does not

13

need reminders to go places, does not have problems getting along with others, including authority figures, and not only has several friends but is open to making new friends.  (*Id.* at 27, 29-30, 31) (citing *id.* at 206, 208-14, 373).  These portions of the record are "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion," *Staheli*, 84 F.4th at 905, of inconsistency with Dr. Horton's opinion that Plaintiff cannot adapt to a work setting.

As previously discussed, the ALJ also addressed the state agency physicians' opinions, noting they found Plaintiff was capable of understanding, recalling, and performing simple repetitive tasks and could adapt to "occasional changes in a work environment where the work demands are generally stable."  (*Id.* at 34-35) (citing *id.* at 72-80, 82-90).  Although the ALJ stated that he found their opinions only partially persuasive, their opinions in this regard appear consistent with the RFC and inconsistent with Dr. Horton's opinion.  *See, cf., Smith*, 821 F.3d at 1269 (affirming ALJ's decision to incorporate into the RFC the plaintiff's moderate limitations, including inability to accept criticism from supervisors and respond appropriately to changes in the workplace, by prohibiting "face-to-face contact" with the public and limiting her to "simple, repetitive, and routine tasks").

The ALJ also discussed Dr. Horton's own examination findings that did not support her finding that Plaintiff was completely unable to adapt to a work setting. He explained that during Dr. Horton's examination, Plaintiff had normal speech, was friendly, cooperative and capable of communicating effectively, appeared socially appropriate although uncomfortable, presented as naïve with childlike qualities, and was "anxious with

depression, but was pleasant." (*Id.* at 27, 30) (citing *id.* at 349-52).  Plaintiff had logical, organized, and goal-directed thought processes, had appropriate judgment and fair insight, was oriented, and had an adequate fund of information.  (*Id.* at 27, 30) (citing *id.* at 349-52).

The ALJ's decision adequately illustrated the lack of consistency between Dr. Horton's opinion and the record, as well as the lack of support in her own examination findings.  The fact that portions of his analysis of the record were stated prior to his discussion of Dr. Horton's opinion does not negate his reasoning.  It is well established that a lack of "contemporaneous discussion" of the evidence by the ALJ in discounting an opinion does not mean the Court cannot review the decision.  "[S]o long as the ALJ's decision includes a summary of the relevant objective medical evidence, he is not required to recite the same evidence again in a different section of the opinion." *Fetter v. O'Malley*, No. CIV-23-762-STE, 2024 WL 2786929, at *6 (W.D. Okla. May 30, 2024) (citing *Best-Willie v. Colvin*, 514 F. App'x 728, 733 (10th Cir. 2013) ("Although there was not a contemporaneous discussion of [the medical evidence] in discounting [the physician's] opinion, in reading the ALJ's decision as a whole, it is evident [the physician's] opinion is inconsistent with the record.")).  Although the ALJ's decision may have benefitted from a more precise discussion of Dr. Horton's opinion, the Court can undertake a meaningful review of the ALJ's reasoning from his review of the medical evidence and record as a whole.

## VII. Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 25th day of March, 2025.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE